

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

September 14, 1959

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Opinion No. WW-701

Re: Whether the Comptroller
    of Public Accounts can
    approve and pay a claim
    for tax refund filed by
    the Bayshore Rod, Reel
    and Gun Club on motor
    fuel purchased in the
    name of the club and
    billed to the club.

Dear Mr. Calvert:

Your request for an opinion on the above referenced
subject reads in part as follows:

"The Bayshore Rod, Reel and Gun Club, a
corporation whose membership is made up of sev-
eral thousand sportsmen and fish and game con-
servationists, has urged that this office secure
an opinion from the Attorney General as to
whether the club can made valid claim for and be
paid tax refunds on motor fuel purchased and
used by its individual members in their private
boats if the motor fuel is purchased in the name
of and billed to the club.

"The Club proposes to proceed as follows in
filing the tax refund claims:

"The Club would request of its members that
when any such member buys motor fuel for use in
his boat that he ask the refund dealer to issue
the invoice and invoice of exemption to and in
the name of the Bayshore Rod, Reel and Gun Club.
The invoice of exemption received with the pur-
chase of the fuel would then be mailed to the
Club by the members where the Club would accu-
mulate the exemptions from all of such members
and would file one refund claim for all of the
motor fuel so purchased and invoiced in the name
of the Club.

" . . .

"Will you please advise this office whether it can approve and pay a claim for tax refund filed by the Bayshore Rod, Reel and Gun Club on motor fuel purchased and paid for by its members and invoiced in the name of the Club as set out above?"

The Act known as the Motor Fuel Tax Law has been codified as Article 7065b of Vernon's Civil Statutes, as last amended in 1957. Provisions concerning refunds of the tax levied are set out in Section 13, subsection (b) of which provides as follows:

"(b) Any person (except as hereinafter provided), who shall use motor fuel for the purpose of operating or propelling any stationary gasoline engine, motorboat, aircraft, or tractor used for agricultural purposes, or for any other purpose except in a motor vehicle operated or intended to be operated upon the public highways of this State, and who shall have paid the tax imposed upon said motor fuel by this Article, either directly or indirectly, shall, when such person has fully complied with all provisions of this Article and the rules and regulations promulgated by the Comptroller, be entitled to reimbursement of the tax paid by him less one and one-half per cent (1½%) allowed distributors, wholesalers and jobbers, and retailers under the provisions of Section 2 (b) of this Article. . . ."

Section 13 (f) provides that:

". . . The refund claim, with all duplicate invoices of exemption required by law to be issued with the sale of refund motor fuel included as a part of said claim, shall be verified by affidavit of the claimant, or a duly authorized agent of the claimant, and shall show the quantity of refund motor fuel acquired and on hand at the beginning and closing dates of the period covered in the refund claim filed.

". . . If upon examination, . . .the Comptroller finds that the claim filed for tax refund is just, and that the taxes claimed have actually been paid by the claimant, then he shall issue warrant due the claimant. . . .

"..."

"If the refund motor fuel was used in aircraft or motor boats, the claim shall show the make and description of such aircraft or motor boat and the quantities of motor fuel used during the period of the refund claim." (Emphasis supplied throughout.)

The above provisions clearly contemplate that the refund shall be paid to the person who uses the motor fuel, after determining that "the taxes claimed have actually been paid by the claimant." Under the fact situation submitted, the individual members of the club, not the club itself, would necessarily be the claimants, as they would have actually paid the tax and used the fuel. Moreover, it would be impossible for an officer of the club to make the affidavits required by the section.

The Club proposes to have its members, when buying motor fuel for use in their boats, request the refund dealer to issue the invoice and invoice of exemption in the club's name. This would constitute, in effect, an attempted assignment of the right to refund. However, Section 13 (i) specifically provides that:

"(i) The right to receive a tax refund under the provisions of this section shall not be assignable except as hereinafter provided. Any person residing or maintaining a place of business outside of the State of Texas who shall purchase motor fuel in any quantity of not less than one hundred (100) gallons and shall export the entire quantity so purchased out of Texas forthwith, may assign his right to claim tax refund to the licensed distributor from whom such motor fuel was purchased, or to any licensed distributor who has paid the tax on such motor fuel either directly or through another licensed and bonded distributor in Texas. . . ."

Attorney General's Opinion No. 0-7341, written in 1946, a copy of which is herewith enclosed, held that the Comptroller may not legally approve a claim for refund of motor fuel tax unless (1) the claimant was the actual user or consumer of the motor fuel and (2) the claimant purchased such motor fuel directly from a licensed refund dealer. It is interesting to note that, at the time this

opinion was written, Section 13 of the Act provided that, "Any person who purchases motor fuel in the State of Texas . . ." for non-highway use shall be entitled to a refund of taxes paid thereon. Thereafter, the Section was amended to read, "Any person. . .who shall use motor fuel. . ." for non-highway purposes shall be entitled to the refund. This seems to indicate an approval by the Legislature of the holding in Opinion No. O-7431.

It has been suggested by the Club's attorney that this situation is identical to that in Attorney General's Opinion No. WW-172, which held that the Civil Air Patrol could apply for and receive refunds of motor fuel taxes paid by its members on fuel used in their airplanes. If the situations are identical, then of course the same result should here be reached. However, a study of Opinion No. WW-172 discloses certain important fact differences, as follows:

1.    The C.A.P., though a volunteer organization, is chartered by Congress and made an auxiliary of the United States Air Force. The Bayshore Rod, Reel and Gun Club is not so chartered. It is, so far as we can determine, simply a club made up of members sharing common interests or hobbies, such as fishing, boating, and hunting, and thus naturally interested in conservation.

2.    The C.A.P., pursuant to its purpose for existence, aids Civilian Defense, health, and law enforcement bodies. The Patrol assigns such missions to its members. (In observation missions aiding the Civilian Defense Ground Corps, the members are usually reimbursed by the Federal Government for expenditures on gasoline and oil.) Members are required to log a minimum number of hours air time per month to preserve flying proficiency. We quote from opinion WW-172 as follows:

"To justify the refund of all the taxes to the Patrol, it is necessary to find that the Patrol is the purchaser of the gasoline and therefore entitled to the refund. Texas Company v. Miller, 165 Fed. 2d 111, cert. den. 333 U.S. 880.

"When Civil Air Patrol missions are flown, the gas, of course, is being used for Patrol purposes, and hence, it would follow that the Patrol is the user and, in effect, the purchaser of the motor fuel consumed. The flier, who

purchases gasoline in the name of the Civil
Air Patrol for Patrol missions is, accord-
ingly, merely the agent for the Patrol."

In the case under consideration here, so far as we
can determine, the Club does not assign missions or duties
to its members; neither does it require them to spend a
minimum amount of time per month in boating activities.

From the above, it is evident that the very nature
and purposes of the two groups are so dissimilar as to make
any analogy in this area impossible.

In addition to the wording of Section 13 of the
Act, above discussed, and the reasoning of the earlier
Attorney General's Opinions, we note that the departmental
interpretation by your office has in the past limited such
refunds to the actual user of the fuel, who has paid the
tax. For these reasons, you are hereby advised that tax
paid by members of the club under consideration may not be
refunded to the club itself.

## SUMMARY

The Comptroller of Public Accounts
cannot approve and pay a tax refund claim
to the Bayshore Rod, Reel and Gun Club,
where the tax claimed was paid by members
of the Club on motor fuel used by them
for a non-taxable purpose.

Very truly yours,

WILL WILSON
Attorney General

JRI:bct

APPROVED:

OPINION COMMITTEE:
Geo. P. Blackburn, Chairman

B. H. Timmins, Jr.
Wm. R. Hemphill
Wallace Finfrock
Riley Eugene Fletcher
Jay D. Howell
James H. Rogers

By: James R. Irion
James R. Irion
Assistant

REVIEWED FOR THE ATTORNEY GENERAL
By: W. V. Geppert